968 P.2d 623

**Colleen McKERNAN, Plaintiff–Appellant,**

v.

**Joseph Arthur DUPONT, M.D. and Jane Doe Dupont; Arizona Center for Joint Replacement, P.C.; Arizona Arthritis and Orthopaedic Surgeons, P.C.; Arizona Arthritis Surgeons, Ltd.; Kim Johnson, M.D. and Jane Doe Johnson; Humana of Arizona, Inc., now known as Galen of Arizona, Inc., Defendants–Appellees.**

No. 1 CA–CV 97–0177.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 27, 1998.

John H. Cotton by John H. Cotton, Michael J. Ryan, Jennifer L. Schwarz, Scottsdale, for Appellant.

O'Connor, Cavanagh, Anderson, Killingsworth & Beshears, P.A. by Harding B. Cure, Christopher Robbins, Phoenix, for Appellees Dupont.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks, Kari B. Zangerle, Renee M. Coury, Phoenix, for Appellee Galen of Arizona, Inc.

## OPINION

TOCI, Judge.

¶ 1 Colleen McKernan appeals from the trial court's refusal to set aside the dismissal of her complaint for failure to prosecute. We conclude that (1) the six-month period for filing a motion for relief from a judgment pursuant to Rule 60(c) of the Arizona Rules of Civil Procedure was not extended by McKernan's failure to discover her lawyer's mental incapacity, (2) even assuming that McKernan's case was dismissed for lack of prosecution because she was abandoned by her Arizona attorney, the fact that she was simultaneously represented by a referring law firm precludes relief under Rule 60(c)(6) for "extraordinary circumstances of hardship or injustice," and (3) McKernan's motion for relief under Arizona Revised Statutes Annotated ("A.R.S.") section 12–504 (1992) was properly denied because the request was neither timely nor did it establish that she vigorously prosecuted her case. We therefore affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 On July 6, 1994, McKernan filed a medical malpractice complaint against Joseph Dupont, M.D., Kim Johnson, M.D., Arizona Center for Joint Replacement, P.C., Arizona Arthritis and Orthopaedic Surgeons, P.C., Arizona Arthritis Surgeons, Ltd., and Humana of Arizona, Inc. (now known as Galen of Arizona, Inc. ("Galen")).[1] McKernan's complaint arose out of a hip replacement surgery Dr. Dupont performed in July 1992. McKernan was represented by two sets of attorneys: Corboy Demetrio Clifford[2] ("Clifford") of Chicago, Illinois, and Stuart J. Reilly, P.C. ("Reilly") of Phoenix, Arizona.[3]

¶ 3 Defendants timely answered the complaint. McKernan's attorneys failed, however, to notify the court of that fact, as required by Rule 1(A) of the Uniform Medical Malpractice Rules, so that the court could set a comprehensive pre-trial conference. In fact, McKernan's attorneys essentially failed to prosecute her case. By minute entry dated April 27, 1995, the court administrator placed the case on the inactive calendar for dismissal of all unadjudicated claims on July 31, 1995.

¶ 4 McKernan moved to continue the case on the inactive calendar. Defendants objected to this motion, arguing that McKernan had failed to actively prosecute the case and urging the court to dismiss the matter. On August 17, 1995, the Honorable Cheryl K. Hendrix expressed her "astonishment" to receive McKernan's motion to continue the case on the inactive calendar, noting that placement of a medical malpractice case on the inactive calendar is impossible because of Rule 1(A) of the Uniform Medical Malpractice Rules. Judge Hendrix concluded, "[T]here is no indication plaintiff, through counsel, has been actively pursuing this matter." Nevertheless, the judge set a Rule 1 comprehensive pre-trial conference for October 2, 1995, ordered McKernan's counsel to submit a comprehensive pre-trial memoran-

---

1. Collectively referred to as "defendants."

2. McKernan was subsequently represented by a successor to this firm, Clifford Law Offices, P.C. (also referred to as "Clifford").

3. McKernan apparently retained the Clifford law firm first, then Clifford associated Reilly to work on the case.

dum to defendants by September 11, 1995, and continued the case on the inactive calendar for dismissal on November 21, 1995.

¶ 5 McKernan did not prepare the comprehensive pre-trial memorandum as ordered. Defendants moved for sanctions and dismissal of the case. On October 2, 1995, at the comprehensive pre-trial conference, Judge Hendrix sanctioned Reilly for failing to file the comprehensive pre-trial memorandum as ordered. The judge ordered McKernan to disclose the identity and preliminary opinions of her experts on or before January 15, 1996, granted defendants leave to file motions for summary judgment after December 15, 1995, and again continued the case on the inactive calendar, setting it for dismissal without prejudice on February 2, 1996.

¶ 6 The parties engaged in some limited discovery, then defendants Dr. Johnson and Galen moved for summary judgment, asserting that McKernan had not established a *prima facie* case of medical negligence against them. Defendant Dr. Johnson also moved for sanctions and attorneys' fees. On March 1, 1996, McKernan moved for another continuance on the inactive calendar. The court held oral argument on that date and dismissed McKernan's claims against Dr. Johnson with prejudice and her claims against the remaining defendants without prejudice for lack of prosecution.[4] The court entered judgment to this effect on April 22, 1996. McKernan did not appeal from this judgment.

¶ 7 On September 2, 1996, McKernan moved to vacate the dismissal pursuant to Rule 60(c) of the Arizona Rules of Civil Procedure or, alternatively, for leave to file a new complaint under A.R.S. section 12–504 (1992), Arizona's savings statute. Among the bases asserted for relief, Reilly alleged that he had been experiencing psychological problems and was unable to handle McKernan's lawsuit. At this point, the case had been reassigned to the Honorable Michael R. McVey. Judge McVey denied McKernan's motion, finding that she had failed to prosecute her case diligently, promptly move to set aside the judgment, or demonstrate that she had a meritorious claim.

¶ 8 On November 12, 1996, McKernan moved for a new trial pursuant to Rule 59 of the Arizona Rules of Civil Procedure. At the oral argument, she was represented not only by Reilly, but also by Matthew I. Baker of Clifford and John H. Cotton of Cohen and Cotton. Judge McVey summarily denied the motion for new trial and incorporated that ruling, along with his ruling denying McKernan's Rule 60(c) motion, into two formal, signed orders entered on February 12 and 13, 1997. McKernan filed a notice of appeal from these two orders.

¶ 9 Around this time, Reilly withdrew from the case and Cotton was substituted as McKernan's Arizona counsel. On April 21, 1997, McKernan filed another Rule 60(c) motion, combined with another motion for leave to file a complaint pursuant to A.R.S. section 12–504, a motion for reconsideration, and a request for an evidentiary hearing. McKernan essentially requested the trial court to reconsider its previous rulings. At McKernan's request, this court stayed her appeal and revested jurisdiction in the superior court to consider the motions. Judge McVey subsequently denied the motions and entered a formal order to this effect. McKernan then filed a second notice of appeal. Pursuant to this court's order, the two appeals have been consolidated. We have jurisdiction over this matter pursuant to A.R.S. section 12–2101(C) (1994). *M & M Auto Storage Pool, Inc. v. Chemical Waste Management, Inc.,* 164 Ariz. 139, 141, 791 P.2d 665, 667 (App.1990) (order denying motion to set aside judgment under Rule 60(c) appealable as a "special order made after final judgment" under A.R.S. section 12–2101(C)).

## II. ISSUES

A. Did the trial court act within its discretion in denying McKernan's second request for Rule 60(c) relief?

1. Was relief inappropriate under Rule 60(c)(2)?

2. Was relief inappropriate under Rule 60(c)(6)?

---

**4.** McKernan does not contest the dismissal of her claims against Dr. Johnson.

B. Did the trial court act within its discretion in denying McKernan's request for leave to file a new complaint pursuant to A.R.S. section 12–504?

C. Did the trial court act within its discretion in denying McKernan's motion for new trial, initial motion for Rule 60(c) relief, and third motion to continue on the inactive calendar?

## III. DISCUSSION

### A. Trial Court Acted Within its Discretion in Denying McKernan's Second Request for Rule 60(c) Relief

¶ 10 McKernan challenges the trial court's denial of her second Rule 60(c) motion, which sought relief pursuant to Rule 60(c)(2) and (6). The trial court has broad discretion in determining whether to grant relief under Rule .60(c) and, absent an abuse of that discretion, we will not disturb its decision. *Copeland v. Arizona Veterans Mem'l Coliseum and Exposition Ctr.,* 176 Ariz. 86, 89, 859 P.2d 196, 199 (App.1993).

#### 1. Relief was Inappropriate Under Rule 60(c)(2)

¶ 11 McKernan sought relief under Rule 60(c)(2), contending that she had recently discovered Reilly's mental health problems and the true status of her case. Under Rule 60(c)(2), a "court may relieve a party ... from a final judgment, order or proceeding for ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d)...." Ariz. R. Civ. P. 60(c). A motion for Rule 60(c)(2) relief must be filed "not more than six months after the judgment or order was entered or proceeding was taken." Ariz. R. Civ. P. 60(c).

¶ 12 McKernan did not file her motion for Rule 60(c)(2) relief until April 21, 1997. This motion sought relief from the trial court's dismissal of her complaint for lack of prosecution. The trial court had dismissed her cause of action against defendants on April 22, 1996. Accordingly, McKernan's motion for Rule 60(c)(2) relief was untimely and properly denied by the trial court. *Stone-berg v. Northwood,* 121 Ariz. 230, 231, 589 P.2d 473, 474 (App.1978).

¶ 13 McKernan asserts that we should apply a "discovery rule" to Rule 60(c)(2) motions and deem her motion timely because she filed it within six months of discovering Reilly's illness and the problems with her case. The language of the rule is clear; a motion for relief under Rule 60(c)(2) "shall be filed ... not more than six months after the judgment or order was entered or proceeding was taken." Ariz. R. Civ. P. 60(c); *Coast To Coast Marketing v. Gordon B. Hamilton Co.,* 164 Ariz. 73, 74, 790 P.2d 771, 772 (App.1990) (we construe words and phrases according to their common and ordinary meaning unless it is clear that some special meaning was intended). Rule 60(c) does not provide for the application of a discovery rule.

¶ 14 McKernan alternatively asserts that her Rule 60(c)(2) motion was timely because it was filed within six months of entry of the trial court's orders denying her initial Rule 60(c) motion and Rule 59 motion for new trial. Those orders, however, are not the orders from which McKernan truly seeks Rule 60(c) relief. She seeks relief from the trial court's April 22, 1996 judgment dismissing her lawsuit. Because McKernan failed to seek Rule 60(c)(2) relief within six months of the entry of that judgment, her Rule 60(c)(2) motion was filed too late.

#### 2. Relief was Inappropriate Under Rule 60(c)(6)

¶ 15 McKernan also sought relief under Rule 60(c)(6), asserting that Reilly's concealment of his mental illness and misrepresentations regarding the status of her case constituted "extraordinary circumstances" justifying relief under that provision. We conclude that McKernan has not demonstrated the "extraordinary circumstances" needed to obtain relief under Rule 60(c)(6).

¶ 16 Relief under Rule 60(c)(6) is appropriate only if the plaintiff shows "extraordinary circumstances of hardship or injustice" other than those circumstances set forth in clauses (1) through (5) of the rule. *Gorman v. City of Phoenix,* 152 Ariz. 179,

182, 731 P.2d 74, 77 (1987) (quoting *Davis v. Davis*, 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1985)). Because the trial court dismissed McKernan's case for lack of prosecution under Rule V(e), Uniform Rules of Practice, McKernan must not only establish "extraordinary circumstances" justifying relief, but also demonstrate that she (1) vigorously prosecuted her case, (2) took reasonable steps to apprise the court of her case's status, (3) will suffer substantial prejudice unless relief is granted, (4) sought relief promptly, and (5) has a meritorious claim. *Jepson v. New*, 164 Ariz. 265, 270, 792 P.2d 728, 733 (1990).

¶ 17 Normally a client is charged with the actions and omissions of his or her attorney. *Mission Ins. Co. v. Cash, Sullivan & Cross*, 170 Ariz. 105, 108, 822 P.2d 1, 4 (App. 1991). However, several federal and California cases have embraced the "positive misconduct" rule that provides, "when an attorney's conduct is so egregious as to constitute an abandonment of the client, the attorney's neglect of the case will not be ascribed to the client, and relief will be granted." *Id.* at 109, 822 P.2d at 5.

¶ 18 No Arizona case has yet adopted the "positive misconduct" rule, but both this court and our supreme court have indicated that such relief under Rule 60(c)(6) may be warranted if the attorney's conduct amounts to a "total abandonment of actual representation." *Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 633, 688 P.2d 637, 641 (1984); *Mission Ins.*, 170 Ariz. at 109, 822 P.2d at 5. In those cases, however, the courts concluded that the attorneys' conduct did not constitute "total abandonment" and they therefore declined to determine whether Rule 60(c)(6) relief would be appropriate under the circumstances. We similarly do not reach the issue in this case because even if Reilly's conduct amounted to "total abandonment" of his client, McKernan was represented throughout these proceedings by the Clifford law firm.

¶ 19 McKernan suggests that we should not consider the inaction of the Clifford law firm because it was not "counsel of record" in the case. The Clifford firm, however, was involved in this case from its inception. In fact, McKernan retained the Clifford attorneys' services first, then they associated Reilly as Arizona counsel. All of the pleadings filed by McKernan in the first year and a half of the litigation listed both Reilly and the Clifford firm as "attorneys for plaintiff." The Clifford firm, not Reilly, was apparently responsible for obtaining medical experts who would testify as to defendants' malpractice. Clifford never indicated that it was withdrawing from its representation of McKernan.

¶ 20 Clifford's association of Reilly did not terminate its attorney-client relationship with McKernan; Clifford continued to owe its client a duty to provide adequate representation. *See Tormo v. Yormark*, 398 F.Supp. 1159, 1173 (D.N.J.1975). Clifford and Reilly each had an independent obligation to McKernan and each may be liable in an action for malpractice. *See id; see also Duggins v. Guardianship of Washington*, 632 So.2d 420 (Miss.1993); *Floro v. Lawton*, 187 Cal.App.2d 657, 10 Cal.Rptr. 98 (Cal.Ct. App.1960).

¶ 21 McKernan contends that the Clifford lawyers also relied on Reilly's representations that the case was progressing properly and that they were justified in believing his assurances because medical malpractice cases in Illinois tend to progress slowly. If Reilly did misrepresent the status of the case to the Clifford firm, those lawyers did not *justifiably* rely on his misrepresentations. The Clifford lawyers reasonably should have been aware of problems with the case. Although it appears that the court did not issue copies of its minute entries to the Clifford firm, defendants sent copies of all of their pleadings to the firm. Had the Clifford lawyers reviewed these pleadings, they would have realized that McKernan's case was constantly being continued on the inactive calendar, that defendants were opposing further continuations and seeking dismissal of the case and sanctions against her attorneys, and that one of the defendants had filed a proposed form of judgment with the court. These pleadings should have put a reasonable lawyer on notice that something was amiss with the case.

¶ 22 Furthermore, McKernan's own pleadings belie the Clifford firm's professed lack of involvement in the case or awareness of its status. Robert Clifford, the managing partner of the firm, submitted an affidavit in support of McKernan's response to defendants' motion for sanctions or dismissal, explaining McKernan's delay in identifying her experts and their opinions. And, at the comprehensive pre-trial conference, Reilly represented to Judge Hendrix that, as late as October 2, 1995, the Clifford firm was primarily responsible for the case and the attorneys who had contact with McKernan.

¶ 23 Relief has been granted under Rule 60(c)(6) where the client's sole attorney has, as a result of medical or psychological conditions, compromised the client's position through a sudden inability to perform. *See, e.g., United States v. Cirami*, 563 F.2d 26 (2d Cir.1977); *P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32 (S.D.N.Y.1993); *Benhil Shirt Shops, Inc. v. Lynns, Inc. (In re Benhil Shirt Shops, Inc.)*, 87 B.R. 275 (S.D.N.Y. 1988); *DeBonavena v. Conforte*, 88 F.R.D. 710 (D.Nev.1981). Here, McKernan was simultaneously represented by other lawyers besides Reilly, and she has not demonstrated that those lawyers were suffering from any disability or otherwise shown that their neglect of her case constitutes the type of "extraordinary circumstances" entitling her to Rule 60(c)(6) relief.[5] There is no suggestion that the lawyers at the Clifford law firm were suffering from any debilitating mental or physical conditions, nor is there any acceptable explanation for their failure to prosecute McKernan's case.

**B. Trial Court Acted Within its Discretion in Denying McKernan's Request for Leave to File New Complaint Pursuant to A.R.S. section 12–504**

 ¶ 24 McKernan also asked the court for relief pursuant to A.R.S. section 12–504, which allows the plaintiff to refile a dismissed action in certain limited circumstances:

> [I]f an action timely commenced is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

A.R.S. § 12–504(A). The plaintiff bears the burden of demonstrating the circumstances justifying relief under the savings statute. *Copeland*, 176 Ariz. at 92, 859 P.2d at 202. We review a trial court's denial of savings statute relief under an abuse of discretion standard. *Id.* at 89, 859 P.2d at 199.

[11] ¶ 25 We first question whether McKernan sought savings statute relief in a timely manner. The trial court entered judgment dismissing her case on April 22, 1996. Although she filed a "Motion to Vacate Dismissal Pursuant to Rule 60, Alternatively, Motion for Leave to File Complaint Under A.R.S. § 12–504" on September 3, 1996, the text of this motion solely addresses the Rule 60(c) issue; it does not mention McKernan's request for relief under the savings statute. It was not until April 21, 1997, that McKernan first filed a motion that actually argued her entitlement to savings statute relief. This motion was filed a year after entry of the judgment dismissing her case and therefore was untimely.[6] Accordingly, Judge McVey properly denied that motion. *Copeland*, 176 Ariz. at 92, 859 P.2d at 202 (trial court appropriately denied request for relief under savings statute where, among other things, plaintiff did not seek relief

---

5. In light of our resolution of this issue, we do not address defendants' arguments that Rule 60(c)(6) relief was also properly denied because McKernan did not promptly seek Rule 60(c)(6) relief, failed to keep the court informed of the status of her case, will not suffer substantial hardship if her case is not reinstated, and failed to present a meritorious defense.

6. For the same reasons noted in our discussion of the Rule 60(c)(2) motion, we reject McKernan's argument that we should apply a "discovery rule" to the six-month time period set forth in the savings statute and her contention that her savings statute motion was timely because it addressed the orders denying her earlier motion for Rule 60(c) relief and her motion for new trial, not the judgment dismissing her case.

within six months of date of termination of action).

¶ 26 Even if McKernan had timely raised the issue of savings statute relief, the trial court properly denied her motion. To obtain relief under this statute, a plaintiff must show that (1) she acted reasonably and in good faith, (2) she prosecuted her case diligently and vigorously, (3) no other impediment exists to filing a second action, and (4) she will be substantially prejudiced. *Id.* at 91–92, 859 P.2d at 201–02. McKernan has not established that she vigorously prosecuted her case.[7]

¶ 27 McKernan did not seek the required Rule 1(A) comprehensive pre-trial conference after all defendants had answered her complaint. She was not diligent in responding to defendants' discovery requests, and she initiated little or no discovery of her own, failing to even notice either of the two defendant doctors' depositions. She failed to produce medical records and thereby caused a delay in the exchange of disclosure statements. She failed to prepare a comprehensive pretrial conference memorandum by the deadline ordered by the court. She constantly sought to continue this case on the inactive calendar, and ultimately failed to timely move to continue the case on the inactive calendar, or submit a motion to set and certificate of readiness. In short, McKernan never vigorously prosecuted this case and is not entitled to relief under the savings statute.

**C. Trial Court Acted Within its Discretion in Denying McKernan's Motion for New Trial, Initial Motion for Rule 60(c) Relief, and Third Motion to Continue on Inactive Calendar**

¶ 28 McKernan claims that the trial court improperly denied her initial Rule 60(c) motion, her motion for new trial, and her motion to continue on the inactive calendar. We will not reverse any of these rulings absent evidence of an abuse of discretion by the trial

court. *Jepson,* 164 Ariz. at 274–75, 792 P.2d at 737–38 (abuse of discretion standard in reviewing denial of Rule 60(c) relief and dismissals for lack of prosecution); *Boatman v. Samaritan Health Services, Inc.,* 168 Ariz. 207, 212, 812 P.2d 1025, 1030 (App.1990) (abuse of discretion standard in reviewing denials of motions for new trial).

**1. Motion for Rule 60(c) Relief**

¶ 29 McKernan's initial motion for Rule 60(c) relief raised the same issues raised in the second motion with regard to Reilly's mental health problems and his concealment of the true status of McKernan's case. For the reasons previously discussed, we conclude that the trial court acted within its discretion in denying this motion.

**2. Motion for New Trial**

¶ 30 A motion for new trial is limited to objections to a "verdict, decision or judgment." Ariz. R. Civ. P. 59(a). The motion must be filed no later than fifteen days after entry of the judgment. Ariz. R. Civ. P. 59(d).

¶ 31 Although McKernan's motion for new trial purportedly sought relief from the court's denial of her Rule 60(c) motion, it really sought to set aside the court's April 22, 1996 judgment dismissing her case for lack of prosecution. She failed to file her motion for new trial until November 12, 1996, more than six months after the deadline. Accordingly, it was quite untimely and properly denied by the trial court. *Butler Products Co. v. Roush,* 145 Ariz. 32, 33, 699 P.2d 906, 907 (App.1984) ("[T]ime limits for filing a motion for new trial are to be strictly applied.").

**3. Motion to Continue on Inactive Calendar**

¶ 32 The trial court's denial of this motion was incorporated into its judgment dismissing McKernan's case for lack of prosecution. McKernan never appealed from

---

7. Unlike our analysis of the attorney abandonment/Rule 60(c)(6) issue, where the client may not be bound by his attorney's conduct under certain circumstances, in reviewing this issue we charge McKernan with the actions or inactions of her attorney. *See Mission Ins.,* 170 Ariz. at 108, 822 P.2d at 4 (normally client is charged with the actions and omissions of his or her attorney).

that judgment. Therefore, we lack jurisdiction to review this ruling. *Butler Products*, 145 Ariz. at 32, 699 P.2d at 906.

## IV. CONCLUSION

¶ 33 The trial court acted within its discretion in denying McKernan's requests for relief under Rule 60(c), A.R.S. section 12–504, and Rule 59. For the reasons discussed, we affirm the trial court's decision.

EHRLICH, P.J., and GERBER, J., concur.